UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

ANDREW M. LENNOX,                  )     Case No. 1:12CV1017
                                   )
                Petitioner,        )     JUDGE JACK ZOUHARY
                                   )
        v.                         )     Magistrate Judge George J. Limbert
                                   )
BARRY GOODRICH, Warden,            )
                                   )
                Respondent.        )     **REPORT AND RECOMMENDATION**
                                   )     **OF MAGISTRATE JUDGE**
                                   )
                                   )

On April 24, 2012, Petitioner, Andrew M. Lennox ("Petitioner"), through counsel, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. ECF Dkt. #1. He seeks relief for alleged constitutional violations that occurred during his Lake County, Ohio Court of Common Pleas convictions for aggravated vehicular homicide in violation of Ohio Revised Code ("ORC") § 2903.06(A)(1)(a); aggravated vehicular homicide in violation of ORC § 2903.06(A)(2)(a); operating a vehicle under the influence of alcohol, a drug of abuse, or a combination of them, in violation of ORC § 4511.19(A)(1)(a); operating a vehicle under the influence of alcohol, a drug of abuse, or a combination of them in violation of ORC § 4511.19(A)(1)(b); operating a vehicle while under the influence of a listed controlled substance or a listed metabolite of a controlled substance in violation of ORC § 4511.19(A)(1)(j)(viii)(l). ECF Dkt. #5-1 at 36-37[1].

On July 9, 2012, Respondent, Barry Goodrich, Warden of Lake Erie Correctional Institution, in Conneaut, Ohio, filed an Answer/Return of Writ. ECF Dkt. #5. On July 24, 2012, Petitioner filed a Traverse. ECF Dkt. #8. On August 6, 2012, Respondent filed a Reply to Petitioner's Traverse. ECF Dkt. #9.

---

[1] Page numbers in this report and recommendation refer to the Page ID# in the electronic filing system.

For the following reasons, the undersigned RECOMMENDS that the Court DISMISS Petitioner's federal habeas corpus petition in its entirety with prejudice:

## I.  SYNOPSIS OF THE FACTS

The Eleventh District Court of Appeals of Ohio set forth the facts of this case on direct appeal.  These binding factual findings "shall be presumed to be correct," and Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-361 (6th Cir. 1998), *cert. denie*d, 119 S.Ct. 2403 (1999).  As set forth by the Ohio Court of Appeals, the facts are:

> Late in the evening of April 17, 2009, Mr. Lennox attended a concert in Cleveland with Ms. Fiorelli.  Before and during the concert, Mr. Lennox drank several shots of liquor and a few beers, apparently under the assumption that Ms. Fiorelli would be driving home.  Although Ms. Fiorelli began the drive to Eastlake, Mr. Lennox took over the wheel somewhere along Lakeshore Boulevard.

> In the one o'clock hour on April 18, 2009, Mr. Lennox increased his speed while on Roberts Road in Eastlake (a 25 m.p.h. zone) to about 68 m.p.h. He ran through a stop sign at Willowick Drive, hit a bump in the road formed by the conjunction of asphalt and concrete, and lost control of his vehicle.  The vehicle struck a telephone pole and was split into two pieces.  Both Mr. Lennox and Ms. Fiorelli were ejected from the vehicle.  Mr. Lennox sustained a laceration to his forehead.  Ms. Fiorelli died at the scene of the accident; her death caused by a blunt impact to her head, trunk, and extremities, resulting in fatal brain injury.

> Lieutenant Herron of the Eastlake Police Department was first to arrive on the scene, shortly after the crash.  He found Mr. Lennox face down, attempting to get up.  Mr. Lennox was advised not to stand, but he did so and inquired whether Ms. Fiorelli could drive the car home for him.  He was placed in a police van to await medical attention, while Lieutenant Herron continued to investigate the crash.  Shortly thereafter, Officer Formick arrived on scene and spoke with Mr. Lennox in the police van.  Upon opening the door to the van, Officer Formick noticed an odor of alcohol.  Officer Formick attempted to discuss the crash, but Mr. Lennox appeared confused and again asked whether Ms. Fiorelli could drive home.  He did not understand the extent of the accident, nor did he realize that Ms. Fiorelli had died at the scene.

> Soon thereafter, Mr. Lennox was treated by paramedics on-scene and then transported, via ambulance, to Lake West Hospital.  Eventually, he was life-flighted to MetroHealth Medical Center for further care, and was released later that same morning.

> Upon hearing that Mr. Lennox had been released, Detective Doyle, of the Eastlake Police Department, sent Patrolman Tanner to escort Mr. Lennox from his parents' home to the station for an interview.  Patrolman Tanner made it clear to Mr. Lennox and his parents that Mr. Lennox was not under arrest, but that Detective Doyle was eager to speak with him that afternoon.  Mr.

Lennox accompanied Patrolman Tanner in a marked police cruiser, while his parents followed in their own vehicle. Mr. Lennox participated in a 15-minute interview with Detective Doyle and was then taken home by his parents.

The following day, Eastlake Police arrested Mr. Lennox and charged him with one count of Aggravated Vehicular Homicide in violation of R.C. 2903.06(A)(1)(a), a second degree felony; one count of Aggravated Vehicular Homicide in violation of R.C. 2903.06(A)(2)(a), a third degree felony; one count of Operating a Vehicle Under the Influence of Alcohol, a Drug of Abuse, or a Combination of Them, in violation of R.C. 4511.19(A)(1)(a), a first degree misdemeanor; one count of Operating a Vehicle Under the Influence of Alcohol, a Drug of Abuse, or a Combination of Them in violation of R.C. 4511.19(A)(1)(b), a first degree misdemeanor; and one count of Operating a Vehicle While Under the Influence of a Listed Controlled Substance or a Listed Metabolite of a Controlled Substance in violation of R.C. 4511.19(A)(1)(j)(viii)(l), a first degree misdemeanor. Mr. Lennox was also charged with three minor traffic violations, which were dismissed prior to trial.

CF Dkt. #5-1 at 171-173[2].

## II.    PROCEDURAL HISTORY

### A.    State Trial Court

In its October 2009 term, the Lake County, Ohio Grand Jury indicted Petitioner on: one count of aggravated vehicular homicide in violation of ORC § 2903.06(A)(1)(a); one count of aggravated vehicular homicide in violation of ORC § 2903.06(A)(2)(a); one count of operating a vehicle under the influence of alcohol, a drug of abuse, or a combination of them, in violation of ORC § 4511.19(A)(1)(a); one count of operating a vehicle under the influence of alcohol, a drug of abuse, or a combination of them in violation of ORC § 4511.19(A)(1)(b); one count of operating a vehicle while under the influence of a listed controlled substance or a listed metabolite of a controlled substance in violation of ORC § 4511.19(A)(1)(j)(viii)(l);one count of reckless operation of a vehicle in violation of ORC § 4511.20(A); one count of speeding in violation of ORC § 4511.21(A); and one count of failing to stop at a stop sign in violation of ORC § 4511.43(A). ECF Dkt. #5-1 at 1-4.

With representation of counsel, Petitioner signed a waiver of his right to be present at arraignment and accepted the bond recommendation, and entered a "not guilty" plea to all of the

---

[2] Page numbers in this report and recommendation refer to the Page ID# in the electronic filing system.

charges.  ECF Dkt. #5-1 at 4.  On February 3, 2010, Plaintiff, through counsel, filed a suggestion of incompetency to stand trial, indicating that he suffered a head injury as a result of the motor vehicle accident and was unable to remember any events of the crime in question and thus was unable to assist in his own defense.  *Id.* at 5.  Within this motion was also a motion to suppress any statement that he made to any police officer at the scene and at the hospital because the statements were involuntarily made due to the physical injury that he suffered which rendered him unable to make a knowing and intelligent waiver of his Miranda rights.  *Id.* at 5-6.

The trial court issued a judgment entry noting that the competence of Petitioner was at issue and ordering a psychological examination of Petitioner by the court psychologist.  ECF Dkt. #5-1 at 10.  On March 18, 2010, the State filed a response to Petitioner's suggestion of incompetency to stand trial, requesting that the court deny the suggestion because the court-ordered competency evaluation found to a reasonable degree of scientific certainty that Petitioner was able to assist in his defense and had the ability to understand the nature and objectives of the proceedings against him.  *Id.* at 13-14.

On May 20, 2010, the trial court issued a judgment entry indicating that it held a competency hearing on May 19, 2010 where both Petitioner and the State appeared and presented evidence and arguments, including the testimony of the court's psychologist and an expert hired by Petitioner.  ECF Dkt. #5-1 at 16.  The court noted that both witnesses had examined Petitioner and found that he understood the nature and objectives of the proceedings against him and was able to assist in his own defense.  *Id*.  The court considered Petitioner's argument that his amnesia of the events surrounding the crimes for which he was charged prevented him from assisting in his own defense.  *Id.*  However, the court rejected Petitioner's assertion and relied upon Ohio caselaw holding that amnesia alone was insufficient to render a defendant incompetent to stand trial.  *Id*. at 16-17.  The court therefore found Petitioner competent to stand trial.  *Id.*

On April 5, 2010, the State filed a motion for a particularized statement regarding Petitioner's motion to suppress, requesting that the court order Petitioner to provide the State with the legal and factual bases of his motion.  ECF Dkt. #5-1 at 18.  Petitioner thereafter filed a supplement to his motion to suppress, asserting that the basis of the motion was tape-recorded

statements made by Petitioner on April 18, 2009 at the Eastlake Police Department to Patrolman Tanner after being forcibly taken there by Patrolman Tanner in violation of his Fourth Amendment rights under the United States Constitution.  *Id.* at 20.  The State thereafter provided a response to Petitioner's motion to suppress.  *Id*. at 24.

On June 2, 2010, the trial court issued a judgment entry indicating that it had held a hearing on the motion to suppress on May 21, 2010.  ECF Dkt. #5-1 at 33.  The trial court denied Petitioner's motion to dismiss, first finding that Petitioner's statements at the police station were not unconstitutionally obtained as he was not under arrest at the time that he made the statements because he had asked if he was under arrest and was told that he was not.  *Id*. at 33-34.  The court further held that Petitioner's statements to the police officer at the scene of the crime were not subject to suppression under Rule 601 of the Ohio Rules of Evidence because that evidentiary rule only applies to the testifying witness, which was Patrolman Formick, not Petitioner, and Petitioner was nevertheless already found competent to stand trial even if the rule did apply to him.  *Id*. at 34.

On June 14, 2010, Petitioner filed a waiver of his right to a jury trial and elected to be tried by a judge.  ECF Dkt. #5-1 at 35.

In a June 24, 2010 judgment entry, the trial court called the case to trial and indicated that the State moved to dismiss the reckless operation, speeding, and failure to stop at a stop sign counts prior to trial.  ECF Dkt. #5-1 at 36.  The trial court heard the case and thereafter found Petitioner guilty on all of the remaining counts in the indictment.  *Id*.

On July 30, 2010, the trial court merged for the purposes of sentencing the first two counts of aggravated vehicular homicide and sentenced Petitioner to four years of imprisonment.  ECF Dkt. #5-1 at 39.  The trial court also merged the fourth and fifth counts of operating a vehicle while under the influence for purposes of sentencing with the third count of operating a vehicle while under the influence and sentenced Petitioner to six months of imprisonment.  *Id*. The court ran the sentences for counts 1 and 3 concurrently for a total of four years in prison.  *Id*.  The court also imposed a mandatory sentence of three years of post-release control and imposed a fine, suspended Petitioner's driver's license for life, assessed six points on his driving record.  *Id*. at 39-40.

**B.**     **Direct Appeal**

On August 27 2010, Petitioner, through trial counsel, filed a notice of appeal and asserted

the following assignments of error:

> **ASSIGNMENT OF ERROR NO. 1**
>
> The evidence is constitutionally insufficient to support a conviction on Aggravated Vehicular Homicide in Count I on either prong– the OVI predicate, or whether alcohol was the proximate cause of the crash,- - - , but is constitutionally sufficient to convict on Vehicular Homicide in Count 2.
>
> **Question Presented**:
>
> Where the state presented no evidence alcohol ingestion was the ***cause*** of the accident, but rather presented compelling evidence, itself, the accident was caused by reckless high speed driving over an unseen road anomaly that threw the vehicle out of control and into a tree, could any juror have the degree of certainty required for conviction by the Due Process Clause, and *Jackson v. Virginia*?
>
> **ASSIGNMENT OF ERROR NO. 2**
>
> The trial court erred in overruling Lennox's motion to suppress the evidence of his interview with Detective Doyle obtained after an unconstitutional seizure. T.d. 84
>
> **Question Presented**:
>
> Does the forcible removal of Mr. Lennox from his home to the police station for the purpose of an investigatory interview, without a warrant, violate the principles of the Fourth Amendment identified in *Dunaway v. New York*?
>
> **ASSIGNMENT OF ERROR NO. 3**
>
> Where a defendant cannot remember any of the events immediately preceding the crash because of amnesia resulting from brain trauma suffered in the collision, and cannot help [sic]is counsel re-create what happened, he is incompetent to stand trial for the charge.  T.d. 51
>
> **Question Presented**:
>
> Has the fear of malingering defendants, and self-serving selective memory, so infested this test it has been effectively written out of the statute?

ECF Dkt. #5-1 at 41-74, 82-114.

On September 30, 2011, the Ohio appellate court affirmed the trial court's judgment and

sentence, overruling each of Petitioner's assignments of error.  ECF Dkt. #5-1 at 253-268.  On

October 11, 2011, Petitioner, through counsel, filed a motion for the appellate court to reconsider

its decision.  *Id*. at 189-194.  On November 3, 2011, the appellate court overruled the application

-6-

for reconsideration. *Id.* at 201-203.

C.     **Supreme Court of Ohio**

On December 14, 2011, Petitioner, through counsel, filed a notice of appeal to the

Supreme Court of Ohio.  ECF Dkt. #5-1 at 204.  In his memorandum in support of jurisdiction,

Petitioner asserted the following propositions of law:

> **PROPOSITION OF LAW 1**
>
> Amnesia of[sic] will make a Defendant incompetent to stand trial under Revised Code Section 2945.37 Where Loss of Memory of Material Facts would be crucial to the construction and presentation of his defense.
>
> **PROPOSITION OF LAW 2**
>
> Removal of a person from where he was found to a police station for further investigation or questioning without a warrant or probable cause violates the Fourth Amendment, and the seizure is complete when the police conduct indicates a reasonable person was not at liberty to ignore the police and go about his business.
>
> **PROPOSITION OF LAW 3**
>
> A sufficiency of the evidence challenge requires the Appellate Court to do more than identify if the State presented evidence on each of the elements of the crime, it requires the Court to make an independent evaluation of whether the factual evidence is sufficient to leave a juror in a state of near certitude of the guilt of the accused.

ECF Dkt. #5-1 at 206-222.  On March 7, 2012, the Supreme Court of Ohio denied

Petitioner leave to appeal and dismissed the appeal as not involving any substantial

constitutional question. *Id.* at 254.

**III.     28 U.S.C. § 2254 PETITION**

On April 24, 2012, Petitioner, through counsel, filed the instant petition for a writ of federal

habeas corpus.  ECF Dkt. #1.  Petitioner raises the following grounds for relief in that petition:

> **GROUND FOR RELIEF NUMBER ONE**:
>
> The forcible removal of Lennox from his home, without probable cause or a warrant, for an investigatory interview at the station violates the Fourth Amendment as explicated in *Dunaway v. New York*, 442 U.S. 200, *Hayes v. Florida*, 470 U.S. 811, and *Kaupp v. Texas*, 538 U.S. 626.
>
> **Supporting Facts:**
>
> 1.     Supporting facts taken from the transcript of the state court hearing on the motion to suppress, pages 61 to 116 of Vol. II of the trial court

-7-

record: at about 1:00 p.m. on April 18th, 2009, just hours after the fatal accident, patrolman Tanner of the Eastlake, Ohio police department was dispatched from the station to the home of Andrew Lennox and instructed to bring him back to the station for questioning. Tanner testified his instructions were: "I want you to go down to Foothill (Andrew's street) and have, transport Mr. Lennox back to the station." Q. "Because I want to talk to him?" A. "Yes." Tr. 72. Page 63, [Officer Tanner] "I explained to him (Lennox) that the detectives would like to speak to him at the station, I was coming to transport him."

Lennox was taken to the police station by Tanner and interviewed by Lieutenant Doyle. Doyle recorded a statement from Lennox and it was played to the fact finder at trial, in violation of *Brown v. Illinois*, 422 U.S. 590.

**GROUND FOR RELIEF NUMBER TWO**:

1.  The evidence is insufficient with regard to Count One in violation of the Due Process Clause and In re Winship, 397 U.S. 358 and Jackson v. Virginia, 433 U.S. 307 because a reasonable juror could not find alcohol was the cause of the accident beyond a reasonable doubt.

**Supporting Facts**:

2.  Supporting facts are as follows: this trial involved two competing theories as the cause of the same death. The state charged in Count One Lennox caused the death of his fiancé passenger as a result of his violating the OVI law. Because Lennox himself was severely injured in the accident, concussion and face and head trauma, requiring him to be helicoptered to a hospital, the police were unable to acquire traditional evidence of impairment beyond what one officer called "odor of alcoholic beverage", Vol. III, p. 204, but not 'strong' odor.

3.  Simultaneously the state charged, in Count 3, the death was caused by Lennox's reckless driving. In pursuit of this theory, the state had employed outside accident reconstruction experts who testified, at page 593 of Vol. IV the transcript thus: Witness Dent, "In your initial report that you gave to the prosecutor on 15 September, you said, did you not, the sole cause of this crash was the excessive and recklessly high speed of the Chevrolet. Mr. Lennox failed to stop for the stop sign at the intersection. Mr. Lennox's driving actions constituted heedless indifference to the consequences of his actions." Ans. "That's correct."

4.  These witnesses never mentioned alcohol as a cause, or even a contributing cause, of the accident. They said it was Lennox's speed over a significant roadway hump that would have caused him to lose control and hit the tree at 68 miles an hour, killing the passenger and splitting the car in half.

5.  Dent's evidence provides the reasonable doubt the crash was caused by alcohol.

### GROUND FOR RELIEF NUMBER THREE

1.     Lennox's trial violated the Due Process Clause because amnesia brought on by the accident made him incompetent to stand trial.  He could not testify about highly relevant facts immediately before the accident, or contest any evidence given by prosecution witnesses, or consult thoroughly with his lawyer. *Drope v. Missouri*, 420 U.S. 162.

2.     Andrew Lennox drove home from Euclid, Ohio with his fiancé on Lake Shore Boulevard.  He turned onto Roberts Road, a residential street, and, from external evidence, accelerated rapidly, crashing the stop sign at the cross street, reaching 68 miles an hour, and losing control of the car, which crashed into a tree with tremendous, deadly force.  Being concussed by the accident, Lennox could not remember any facts from the time he entered Roberts Road until he was being life-flighted to the hospital.

3.     He was examined by two psychologists, one of his choosing and one of the state's, to see if he was competent to stand trial.  They both determined the memory loss was caused by the accident, was genuine, and was permanent.  Both actually said lack of memory of final moments could negatively affect his ability to defend himself. Eisenberg, pp. 20-22, Rindsberg, 62. He did not testify because he had no memory of the relevant and vibrant facts. Vol. I, pp. 1-72, trial court transcript.

ECF Dkt. #1 at 2-4.  On July 9, 2012, Respondent filed an Answer/Return of Writ.  ECF Dkt. #5.  On July 24, 2012, Petitioner filed a Traverse.  ECF Dkt. #8.  On August 6, 2012, Respondent filed a Reply to Petitioner's Traverse.  ECF Dkt. #9.

## IV.    PROCEDURAL BARRIERS TO REVIEW

A petitioner must overcome several procedural barriers before a court will review the merits of a petition for a federal writ of habeas corpus.  As Justice O'Connor noted in *Daniels v. United States*, "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim."  532 U.S. 374, 381 (2001); *see also United States v. Olano*, 507 U.S. 725, 731 (1993).

### A.    Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") statute of limitations period for filing a petition for a writ of federal habeas corpus is one year, and it begins to run on the date judgement became final.  28 U.S.C. § 2244(d)(1).  The AEDPA statute of limitations is not at issue in this case.

### B.     Exhaustion of State Remedies

As a general rule, a state prisoner must exhaust all possible state remedies or have no remaining state remedies before a federal court will review a petition for a writ of habeas corpus. 28 U.S.C. § 2254(b) and (c); *see also Baldwin v. Reese*, 541 U.S. 27, 29 (2004). The exhaustion requirement is satisfied "once the federal claim has been fairly presented to the state courts." *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987). To exhaust a claim, a petitioner must present it "to the state courts under the same theory in which it is later presented in federal court." *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998); *see also McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). General allegations of the denial of rights to a "fair trial" and "due process" do not "fairly present" claims that specific constitutional rights were violated. *McMeans*, 228 F.3d at 681 citing *Petrucelli v. Coombe*, 735 F.2d 684, 688-89 (2d Cir. 1984).

In order to have fairly presented the substance of each of his federal constitutional claims to the state courts, the petitioner must have given the highest court in the state in which he was convicted a full and fair opportunity to rule on his claims. *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). A petitioner fairly presents the substance of his federal constitutional claim to the state courts by: (1) relying upon federal cases that use a constitutional analysis; (2) relying upon state cases using a federal constitutional analysis; (3) phrasing his claim in terms of constitutional law or in terms sufficiently particular to allege the denial of a specific constitutional right; or (4) alleging facts that are obviously within the mainstream of constitutional law. *Clinkscale v. Carter*, 375 F.3d 430, 437 (6th Cir. 2004), quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003); *see also Levine v. Torvik*, 986 F.2d 1506, 1516 (6th Cir. 1993) cert. denied, 509 U.S. 907 (1993)(quotation omitted). In *Harris v. Lafler*, the Sixth Circuit laid out the options that a district court may pursue in dealing with a petition that contains unexhausted claims:

> When faced with this predicament in the past, we have vacated the order granting the writ and remanded the case to the district court so that it could do one of four things: (1) dismiss the mixed petition in its entirety, *Rhines*, 544 U.S. at 274, 125 S.Ct. 1528; (2) stay the petition and hold it in abeyance while the petitioner returns to state court to raise his unexhausted claims, *id.* at 275, 125 S.Ct. 1528; (3) permit the petitioner to dismiss the unexhausted claims and proceed with the exhausted claims, *id.* at 278, 125 S.Ct. 1528; or (4) ignore the exhaustion requirement altogether and deny the petition on the merits if none of the petitioner's claims has any merit, 28 U.S.C. § 2254(b)(2).

-10-

553 F.3d 1028, 1031-32 (6th Cir. 2009). The Supreme Court has held that "the petitioner has the burden . . . of showing that other available remedies have been exhausted or that circumstances of peculiar urgency exist." *Darr v. Burford*, 339 U.S. 200, 218-19 (1950), *overruled in part on other grounds*, *Fay v. Noia*, 372 U.S. 391 (1963). A petitioner will not be allowed to present claims never before presented in the state courts unless he can show cause to excuse his failure to present the claims in the state courts and actual prejudice to his defense at trial or on appeal, or that he is actually innocent of the crime for which he was convicted. *Coleman v. Thompson*, 501 U.S. 722, 748 (1991).

      **C.**    **Procedural Default**

      The procedural default doctrine serves to bar review of federal claims that a state court has declined to address when a petitioner does not comply with a state procedural requirement. *Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). In these cases, "the state judgment rests on independent and adequate state procedural grounds." *Coleman v. Thompson,* 501 U.S. 722, 730, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). For purposes of procedural default, the state ruling with which the federal court is concerned is the "last explained state court judgment." *Munson v. Kapture*, 384 F.3d 310, 314 (6th Cir. 2004) citing *Ylst v. Nunnemaker*, 501 U.S. 797, 805, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991) (emphasis removed). When the last explained state court decision rests upon procedural default as an "alternative ground," a federal district court is not required to reach the merits of a habeas petition. *McBee v. Abramajtys*, 929 F.2d 264, 265 (6th Cir. 1991). In determining whether a state court has addressed the merits of a petitioner's claim, federal courts must rely upon the presumption that there is no independent and adequate state grounds for a state court decision absent a clear statement to the contrary. *Coleman*, 501 U.S. at 735.

      Applying this presumption, the Sixth Circuit Court of Appeals established a four-pronged analysis to determine whether a claim has been procedurally defaulted under *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). Under the first prong of *Maupin*, there must be a firmly established state procedural rule applicable to the petitioner's claim and the petitioner must not have complied with the rule. *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991). Under the second prong, the last state

-11-

court to which the petitioner sought review must have invoked the procedural rule as a basis for its decision to reject review of the prisoner's federal claims. *Coleman,* 501 U.S. at 729-30; *Richey*, 395 F.3d at 678 ("a lapsed claim survives if the state court overlooked the default and decided the claim anyway"); *Baze v. Parker*, 371 F.3d 310, 320 (6th Cir. 2004) (if a state court does not expressly rely on a procedural deficiency, then a federal court may conduct habeas review); *Gall v. Parker*, 231 F.3d 265, 310 (6th Cir. 2000) (even if issue is not raised below, where state supreme court clearly addresses the claim, no procedural bar arises).  Under the third prong, a state judgment invoking the procedural bar must rest on a state law ground that is both independent of the merits of the federal claim and is an adequate basis for the state court's decision.  *Munson v. Kapture*, 384 F.3d 310, 313-14 (6th Cir. 2004).  Under the fourth prong, a claim that is procedurally defaulted in state court will not be reviewable in federal habeas corpus unless the petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or that failure to consider the claim will result in a fundamental miscarriage of justice.  *Coleman*, 501 U.S. at 751.  "Cause" is a legitimate excuse for the default, and "prejudice" is actual harm resulting from the alleged constitutional violation.  *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984), *cert. denied*, 490 U.S. 1068 (1985).  If a petitioner fails to show cause for his procedural default, the reviewing court need not address the issue of prejudice.  *Smith v. Murray*, 477 U.S. 527 (1986).

Simply stated, a federal court may review federal claims:

> that were evaluated on the merits by a state court. Claims that were not so evaluated, either because they were never presented to the state courts (i.e., exhausted) or because they were not properly presented to the state courts (i.e., were procedurally defaulted), are generally not cognizable on federal habeas review.

*Bonnell v. Mitchel,* 301 F.Supp.2d 698, 722 (N.D. Ohio 2004).

The above standards apply to the Court's review of Petitioner's claims.

## **V**.    **STANDARD OF REVIEW**

If Petitioner's claims overcome the procedural barriers of time limitation, exhaustion and procedural default, AEDPA governs this Court's review of the instant case because Petitioner filed his petition for the writ of habeas corpus pursuant to 28 U.S.C. § 2254 well after the act's effective date of April 26, 1996.  *Harpster v. Ohio*, 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied*, 522 U.S.

-12-

1112 (1998).  Under Section 2254, a state prisoner is entitled to relief if he is held in custody in violation of the United States Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(d).

The AEDPA sets forth the standard of review for the merits of a petition for the writ of habeas corpus.  The AEDPA provides:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1)  resulted in a decision that was *contrary to*, or involved an *unreasonable application of*, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (emphasis added).  In *Williams v. Taylor*, the Supreme Court clarified the language of 28 U.S.C. § 2254(d) and stated:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  Furthermore, the Supreme Court declared that "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.*  Elaborating on the term "objectively unreasonable," the Court stated that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable."  *Id.*; *see also Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001).

The Sixth Circuit Court of Appeals offers the following guidelines for applying the AEDPA limitations:

> A.  Decisions of lower federal courts may not be considered.
>
> B.  Only the holdings of the Supreme Court, rather than its dicta, may be

considered.

C.  The state court decision may be overturned only if:

1.  It '[applies] a rule that contradicts the governing law set forth in [Supreme Court of the United States] cases,' [the Supreme Court precedent must exist at the time of petitioner's direct appeal] or;

2.  the state-court decision 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent;' or

3.  'the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case;' or

4.  the state court 'either unreasonably extends a legal principle from [a Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'

D.  Throughout this analysis the federal court may not merely apply its own views of what the law should be. Rather, to be overturned, a state court's application of Supreme Court of the United States precedent must also be objectively unreasonable.  That is to say, that 'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.'  'An unreasonable application of federal law is different from an incorrect or erroneous application of federal law.'

E.  Findings of fact of the state courts are presumed to be correct. 'The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.'

*Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001) (internal citations omitted).

Finally, a reviewing federal court is bound by the presumption of correctness, under which the federal court is obligated to "accept a state court's interpretation of the state's statutes and rules of practice."  *Hutchinson v. Marshall*, 744 F.2d 44, 46 (6th Cir. 1984), *cert. denied*, 469 U.S. 1221 (1985); *see also Duffel v. Duttion*, 785 F.2d 131, 133 (6th Cir. 1986).  The presumption of correctness is set forth in 28 U.S.C. § 2254(e), which provides:

-14-

>(e)(1)In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.

28 U.S.C. § 2254(e).  The presumption of correctness applies to basic primary facts, and not to mixed questions of law and fact.  *Levine v. Torvik*, 986 F.2d 1506, 1514 (6th Cir. 1993), *cert. denied,* 509 U.S. 907 (1993).  The presumption also applies to "implicit findings of fact, logically deduced because of the trial court's ability to adjudge the witnesses' demeanor and credibility."  *McQueen v. Scroggy*, 99 F.3d 1302, 1310 (6th Cir. 1996), *cert. denied*, 520 U.S. 1257 (1997).  Furthermore, a reviewing federal court is not free to ignore the pronouncement of a state appellate court on matters of law.  *See Central States, Southeast & Southwest Areas Pension Fund v. Howell*, 227 F.3d 672, 676, n.4 (6th Cir. 2000).  Petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

## VI.  ANALYSIS

### A.  GROUND FOR RELIEF NUMBER ONE- NONCOGNIZABILITY

Respondent asserts that Petitioner's first ground for relief is not cognizable before this federal habeas corpus court because only limited instances exist in which a convicted defendant may raise Fourth Amendment violation allegations in a collateral proceeding and the instant proceeding does not involve any of those limited instances.  ECF Dkt. #5 at 10.  Respondent cites *Stone v. Powell*, 428 U.S. 465, 494 (1976), and *Williams v. Taylor*, 529 U.S. 362 (2000) in support.  *Id*. at 10-11.  Petitioner counters that *Stone* is no longer good law after the enactment of the AEDPA and the Suspension Clause of the United States Constitution would be violated if *Stone* were interpreted to bar his Fourth Amendment claim.  ECF Dkt. #8 at 3.

The undersigned recommends that the Court find that *Stone* remains good law after the enactment of the AEDPA.  In *Stone v. Powell,* the United States Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."  428 U.S. at 494.  In

*Mitchell v. Sheldon*, No. 3:08CV2899, 2009 WL 1911841, at * (N.D. Ohio June 30, 2009),

unpublished, Judge Gaughan of this District noted that:

> [n]o federal appeals court has found that *Stone v. Powell* is no longer good law.
> The Sixth Circuit, in particular, has continued to apply it since the AEDPA's 1996
> enactment.  *See, for e.g.,Lawrence v. 48th Dist. Court*, 560 F.3d 475, f.n. 7 (6th
> Cir.2009) (citing *Stone v. Powell* ) ("Ordinarily, we do not recognize Fourth
> Amendment claims in Section 2254 actions if the state proceedings provided the
> petitioner a full and fair opportunity to litigate that claim."); *Harding v. Russell*,
> 156 Fed.Appx. 740 (6th Cir.2005) ("We also conclude that Harding's Fourth
> Amendment claim is foreclosed by *Stone v. Powell*, 428 U.S. 465, 494, 96 S.Ct.
> 3037, 49 L.Ed.2d 1067 (1976)); and *Machacek v. Hofbauer*, 213 F.3d 947, 952
> (6th Cir.2000) (citing *Stone v. Powell* ) (The court concluded that Fourth
> Amendment claims generally cannot be raised for the first time on federal habeas
> review and stated, "Accordingly, any claims concerning the validity of
> [petitioner's] arrest are not cognizable on habeas review under the doctrine of
> *Stone v. Powell*." )

Thus, the undersigned recommends that the Court find that *Stone* remains good law even after the

AEDPA and Fourth Amendment claims are not cognizable in federal habeas corpus proceedings

unless the petitioner has been denied a full and fair opportunity to litigate his claim.  *Id*. at 469,

482, 494-95.

The Sixth Circuit Court of Appeals uses a two-step inquiry in order to determine whether

a defendant was given a full and fair opportunity to litigate a Fourth Amendment claim in state

court:  "First, the court must determine whether the state procedural mechanism, in the abstract,

presents the opportunity to raise a fourth amendment claim. Second, the court must determine

whether presentation of the claim was in fact frustrated because of a failure of that mechanism."

*Machacek v. Hofbauer,* 213 F.3d 947, 952 (6th Cir. 2000) (internal quotations omitted); *Riley v.

Gray*, 674 F.2d 522, 527 (6th Cir. 1982).  The Sixth Circuit has held that "[t]he mechanism

provided by the State of Ohio for the resolution of fourth amendment claims is, in the abstract,

clearly adequate."  *Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982).

Petitioner has not demonstrated that a failure of that mechanism has occurred in this case.

He filed a motion to suppress in the trial court and the trial court held a hearing on the motion and

overruled his motion.  ECF Dkt. #5-1 at 6-7, 20-23, 32-34.  Petitioner appealed the trial court's

denial of his motion to suppress to the Ohio appellate court and sought reconsideration with the

-16-

appellate court and further review in the Supreme Court of Ohio after the appellate court affirmed the trial court's judgment and denied his motion for reconsideration  ECF Dkt. #5-1 at 41-74, 82-114, 170-194, 201-221, 254.  Both the trial court and the appellate court considered his Fourth Amendment arguments and concluded that no Fourth Amendment violation existed.  *Id.* Accordingly, the undersigned recommends that the Court find that Petitioner was afforded an adequate opportunity to present his Fourth Amendment claims, the lower courts considered those claims, and those opportunities were in no way frustrated by a failure of the mechanism in which to present those claims.

The undersigned further recommends that the Court find that the Suspension Clause is not violated by applying *Stone* to Petitioner's case.  The Suspension Clause provides that "[t]he Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it."  U.S. Const. Art. 1 § 9.  Petitioner cites to no federal statute or caselaw holding that *Stone* violates the Suspension Clause.

Moreover, "[l]imitations on the availability of federal habeas relief for state court convictions are nothing new.  Before AEDPA, the scope of the writ was already subject to 'a complex and evolving body of equitable principles informed and controlled by historical usage, statutory developments, and judicial decisions.'"  *Evans v. Thompson*, 518 F.3d 1, 12 (1st Cir. 2008), quoting *Felker v. Turpin*, 518 U.S. 651, 664, 116 S.Ct. 2333 (1996)(quoting *McCleskey v. Zant*, 499 U.S. 467, 489, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991)(internal quotation mark omitted).  In *Felker*, the United States Supreme Court upheld the AEDPA's restrictions on successive federal habeas corpus petitions, finding that the new restrictions of the AEDPA, which includes a requirement that a federal habeas corpus petitioner obtain leave from the court of appeals before filing a second federal habeas corpus petition in the district court, were "well within the compass of this evolutionary process." *Id*. Limiting the grounds upon which a federal habeas corpus court can upset a state court conviction does not suspend a federal habeas corpus action, but rather only modifies or restricts the conditions under which a federal court can grant relief.  "Just as Congress can expand the availability of habeas relief, it can also add some

-17-

restrictions to the issuance of the writ without effectuating its suspension." *Evans,* 518 F.3d at

12, *citing Felker*, 518 U.S. at 664, 116 S.Ct. 2333 (upholding the constitutionality of the

AEDPA's restrictions on numerous habeas corpus petitions; and *Delaney v. Matesanz*, 264 F.3d

7, 12 (1st Cir.2001).  Accordingly, the undersigned recommends that the Court find that *Stone's*

limitation does not violate the Suspension Clause.

> **B.**    **GROUND FOR RELIEF NUMBER TWO - SUFFICIENCY OF**
> **THE EVIDENCE**

In this Ground for Relief, Petitioner asserts that the evidence was insufficient to convict

him of aggravated vehicular homicide because the State's evidence that he was speeding, drove

recklessly and hit a bump in the road, negated a finding that alcohol was the cause of the accident

beyond a reasonable doubt.  ECF Dkt. #1 at 3; ECF Dkt. #8 at 14-15.

An allegation that the verdict was entered upon insufficient evidence states a claim under the

Due Process Clause of the Fourteenth Amendment to the United States Constitution.  *Jackson v.*

*Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, *reh'g denied*, 444 U.S. 890 (1979), *and In*

*re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).  In order to establish an

insufficiency of the evidence claim, the relevant inquiry is "whether after viewing the evidence in

the light most favorable to the prosecution, any rational trier of fact could have found the essential

elements of the crime beyond a reasonable doubt." *Scott v. Mitchell,* 209 F.3d 854, 885 (6th Cir.

2000), *quoting Jackson,* 443 U.S. at 319.  When reviewing the sufficiency of the evidence, a habeas

court may not weigh the evidence, assess the credibility of the witnesses, or substitute its judgment

for the jury. *See United States v. Jackson*, 55 F.3d 1219, 1225 (6th Cir.1995).  Moreover, the inquiry

is not whether the trier of fact made the *correct* determination of guilt or innocence, but whether it

made a *rational* decision to acquit or convict.  *Williams v. Haviland,* No. 1:05CV1014, 2006 WL

456470, *3 (N.D.Ohio Feb. 24, 2006), citing *Herrera v. Collins,* 506 U.S. 506 U.S. 390, 401-02, 113

S.Ct. 853, 122 L.Ed.2d 203 (1993).  In determining whether the state court's determination was

objectively unreasonable, the Court must first determine whether the evidence was sufficient to

convict under *Jackson*.  *See Pinchon v. Myers*, 615 F.3d 631, 643 (6th Cir. 2010).  If sufficient

evidence exists with which to convict, the inquiry ends.  *Id.*  If the Court finds that the evidence is insufficient to convict, then it must apply the AEDPA deference standard and determine whether the Ohio appellate court's determination as to the trial court's verdict was "objectively unreasonable" in concluding to the contrary, keeping in mind that it is looked at "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.,* quoting *Tucker v. Palmer,* 615 F.3d 631, citing *Jackson*, 443 U.S. at 319.  This is the "double layer" of deference due a state court determination about the sufficiency of the evidence. *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).  A District Court is not permitted to overturn a conviction merely because it would have acquitted had it acted as the finder of fact.  *Brown v. Davi*s, 752 F.2d 1142, 1147 (6th Cir. 1985), and *Walker v. Engle,* 703 F.2d 959,  969 (6th Cir. 1983).

The Ohio appellate court in this case cited to *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), the Supreme Court of Ohio case citing to *Jackson*, in determining the proper standard of review for a sufficiency of the evidence claim.  ECF Dkt. #5-1 at 175-176.  The appellate court applied that standard and concluded that any rational juror could have found that the state proved all of the elements of aggravated vehicular homicide under Ohio law beyond a reasonable doubt.  *Id.*

The appellate court cited to Ohio Revised Code section 2903.06(A)(1)(a), the aggravated vehicular homicide statute, which provided in relevant part that "[n]o person, while operating or participating in the operation of a motor vehicle...shall cause the death of another...[a]s the proximate result of committing a violation of division (A) of section 4511.19 of the Revised Code or of a substantially equivalent municipal ordinance."  ECF Dkt. #5-1 at 175, quoting ORC § 2906.06(A)(1)(a).  The court thereafter addressed Petitioner's assertion that the State failed to prove the element of proximate cause because insufficient evidence existed that "the alcohol he consumed before driving substantially impaired his driving or that the alcohol was a substantial factor in Ms. Fiorelli's death."  ECF Dkt. #5-1 at 175.

The Ohio appellate court recited the evidence of Petitioner's consumption of alcohol before the crash, including testimony by police officers of numerous admissions by Petitioner that he had been drinking, Petitioner smelling of alcohol, and a bottle of Jack Daniels whiskey found at the

scene. ECF Dkt. #5-1 at 177-178. The court also cited to the scientific evidence presented at trial which showed that Petitioner was intoxicated and the intoxication had effected his driving that night. Id. at 178. The court cited to the testimony of two forensic scientists presented by the State, one who tested Petitioner's blood which showed a blood alcohol concentration ("BAC") of .082 or .083 an hour and a half after the accident. *Id*. He further testified that he conducted a retrograde extrapolation of Petitioner's BAC, and the results lead him to conclude that Petitioner would have had a BAC of .099 to .116 at the time of the crash. *Id.* The court further noted that this forensic scientist testified as to the effects of an elevated BAC such as Petitioner's levels on driving, which resulted in decreased judgment, reasoning, and the ability to filter and respond to stimuli, including impairment in emotional stability, ability to control inhibitions, critical judgment, memory and concentration, and reaction time and muscle coordination. *Id.*

The appellate court also cited to the testimony of the State's accident reconstructionist, who testified that the bump in the road, which Petitioner argued was the sole cause of his loss of control of the vehicle and the accident, was merely a catalyst and not the exclusive cause. ECF Dkt. #5-1 at 179. The reconstructionist testified that the bump in the road would not have a been a problem for Petitioner had he been driving at the 25 mile per hour speed limit and no evidence showed that Petitioner even attempted to break or correct his steering after encountering the bump. *Id.*

Based upon this evidence, the appellate court concluded that while the bump in the road played some role in the crash, sufficient evidence was presented to show that alcohol consumption played a substantial role in proximately causing the crash and Ms. Fiorelli's death. ECF Dkt. #5-1 at 179. The appellate court explained that whether Petitioner's drinking impacted his decision to speed and run a stop sign, or his ability to control the vehicle upon hitting the bump, "the trial court did not err in finding that sufficient evidence was presented to support the state's allegation that Mr. Lennox's alcohol-impaired driving proximately caused the motor vehicle accident resulting in Ms. Fiorelli's death." *Id.*

Viewing the evidence presented at trial, the undersigned recommends that the Court find that the Ohio appellate court's determination was not contrary to or an unreasonable application of United

-20-

States Supreme Court precedent or the facts of record as any rational trier of fact could have found the essential elements of aggravated vehicular homicide proven beyond a reasonable doubt and that Petitioner's consumption of alcohol played a substantial factor in causing the motor vehicle crash that resulted in Ms. Fiorelli's death.

### C.     GROUND FOR RELIEF NUMBER THREE- COMPETENCY

In his third ground for relief, Petitioner asserts that his rights under the Due Process Clause were violated when the trial court found him competent to stand trial. ECF Dkt. #1 at 3-4. Petitioner complains that the amnesia that he suffered as a result of the crash rendered him incompetent to stand trial because he was unable to thoroughly consult with his attorney, was unable to testify about highly relevant facts that occurred before the crash, and he was unable to contest any of the evidence that the State presented through prosecution witnesses. *Id.*

"It is well established that the Due Process Clause of the Fourteenth Amendment prohibits the criminal prosecution of a defendant who is not competent to stand trial." *Medina v. California* 505 U.S. 437, 439 (1992); citing *Drope v. Missouri*, 420 U.S. 162 (1975); *Pate v. Robinson*, 383 U.S. 375 (1966). "The standard for competence to stand trial is whether the defendant has" (1) sufficient present ability to consult with a lawyer with a reasonable degree of rational understanding; and (2) a rational and factual understanding of the proceedings against him." *Franklin v. Bradshaw,* 695 F.3d 438, 447 (6th Cir. 2012), citing *Godinez v. Moran*, 509 U.S. 389, 396, 113 S.Ct. 2680, 125 L.Ed.2d 321 (1993)(quoting *Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960)).

Ohio law incorporates this standard under Ohio Revised Code section 2945.37(G), which states that a defendant is presumed competent to stand trial, unless it is proved by a preponderance of the evidence that "because of [his] present mental condition, [he] is incapable of understanding the nature and objective of the proceedings against [him] or of presently assisting in [his] defense." Ohio Rev. Code § 2945.37(G). Further, the Sixth Circuit has held:

> A state-court determination of competence is a factual finding, to which deference must be paid. *Thompson v. Keohane*, 516 U.S. 99, 110-11, 116 S.Ct. 457, 133 L.Ed.2d 383 (1995). "[R]egardless of whether we would reach a different conclusion were we reviewing the case de novo, the findings of the

> state court must be upheld unless there is clear and convincing evidence to the contrary." *Clark v. O'Dea*, 257 F.3d 498, 506 (6th Cir.2001); *see also Wood v. Allen*, 558 U.S. 290, 130 S.Ct. 841, 849, 175 L.Ed.2d 738 (2010) (stating that as for 28 U.S.C. § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance"). And that deference must be paid even to state-court factual findings made on appeal. *See Rushen v. Spain*, 464 U.S. 114, 120, 104 S.Ct. 453, 78 L.Ed.2d 267 (1983); *Sumner v. Mata*, 449 U.S. 539, 546–47, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981). "Further, the Supreme Court has very recently made abundantly clear that the review granted by AEDPA is even more constricted than AEDPA's plain language already suggests." *Peak v. Webb*, 673 F.3d 465, 472 (6th Cir.2012). "[S]o long as fairminded jurists could disagree on the correctness of the state court's decision," relief is precluded under AEDPA. *Harrington v. Richter*, ––– U.S. ––––, 131 S.Ct. 770, 786, 178 L.Ed.2d 624 (2011) (internal quotation marks omitted).

In addressing this issue on appeal, the Ohio appellate court cited to Ohio caselaw which cited to *State v. Berry*, 72 Ohio St.3d 354, 359 (1995), a case in which the Supreme Court of Ohio incorporated the United States Supreme Court's test for determining a defendant's competency to stand trial under *Dusky*.

The Ohio appellate court thereafter addressed Petitioner's assertion that amnesia that he experienced from minutes before the crash until he was on his way to the hospital after the crash required a finding that he was incompetent to stand trial. The court cited to a case in which it adopted the Supreme Court of Ohio's holding that "amnesia alone is not sufficient to render the accused incompetent to stand trial." ECF Dkt. #5-1 at 185, citing *State v. DeMarco*, No. 2007-L-130, 2008 WL 2719575, 2008-Ohio-3511 (Ohio App. 11th Dist. July 11, 2008), quoting *State v. Brooks*, 25 Ohio St.3d 144, 495 N.E.2d 407 (1986). The appellate court noted that the *DeMarco* case was similar to that of Petitioner. The appellate court noted that a trial court had found DeMarco competent to stand trial even though he had suffered amnesia and had no memory of the motor vehicle accident in which he was driving "at a high rate of speed" and collided with another car which resulted in the death of the driver and injuries to a passenger. ECF Dkt. #5-1 at 185, citing and quoting *DeMarco*, 2008 WL 2719575. The Ohio appellate court noted that while a clinical psychologist had found that DeMarco had amnesia, he was still able to understand the nature and objective of the

-22-

proceedings against him and could assist in his own defense.  *Id.*  The Ohio appellate court in the instant case reasoned:

> Much like the defendant in DeMarco, Mr. Lennox experienced very limited and discrete amnesia.  Experts for both sides acknowledged they had no reason to believe Mr. Lennox's amnesia was malingered, however, they each concluded Mr. Lennox met both prongs of the test for competency in Ohio. See, R.C. 2945.37(G); *Berry*, supra.
>
> Mr. Lennox was able to relate information about the events of the evening leading up to the crash coherently, including that he and his fiancee had been drinking and where they had been.  No question existed as to whether Mr. Lennox was able to understand why he was involved in the case and what his role was, fulfilling the first prong of the test.
>
> The defense's own expert testified that, based on what he had observed, Mr. Lennox had the "ability to speak intelligently with [his attorney] on whatever it is they want to talk about," including trial strategy.  In addition Mr. Lennox did not experience continuing memory loss of events after the car accident or any difficulty with short-term memory.  As a result, both experts testified Mr. Lennox would be able to comprehend trial testimony, remember it, and help his attorney react to it.
>
> The expert testimony supported the trial court's determination that Mr. Lennox was competent to stand trial.  Because reliable, credible evidence existed to sustain the trial court's determination, this court will not overturn the trial court's conclusion of competency.

ECF Dkt. #5-1 at 185-186.

Petitioner cites to the testimony of his expert witness and the State's expert witnesses at his competency hearing as evidence of his inability to consult with his counsel about the crash itself.  ECF Dkt. #1 at 4.  However, both of the experts testified that it was their opinion that he was competent to stand trial despite his amnesia.  Petitioner's own expert witness testified that while Petitioner's failure to remember the accident itself and the facts immediately prior would impact his ability to assist his lawyer as to the particular point in time, it was his opinion that Petitioner was nevertheless able to consult with his lawyer and aid in his own defense and he had a rational and factual understanding of the proceedings against him.  ECF Dkt. #6 at 13-16.  The State's expert witness also testified that Petitioner had the ability to understand the nature and objective of the proceedings against him and that

-23-

while his amnesia surrounding the accident would make it difficult to assist in his own defense, it was still his opinion that Petitioner had the ability to assist with his defense. *Id.* at 46-52. The undersigned recommends that the Court find that this expert witness testimony does not constitute clear and convincing evidence that the determination of competency was clearly wrong. *See Franklin*, 695 F.3d at 449. The Court should find that Petitioner has therefore failed to rebut the presumption of correctness that is afforded to the state court's determination that he was competent to stand trial.

The undersigned further recommends that the Court find that Petitioner otherwise fails to demonstrate that the state court decision was contrary to or involved an unreasonable application of clearly established federal law as determined by the Supreme Court or that it was an unreasonable determination of the facts in light of the evidence of record.

## VII.  CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the undersigned RECOMMENDS that the Court find that Petitioner's first ground for relief is not cognizable and that his second and third grounds for relief are without merit. Accordingly, the undersigned recommends that the Court DISMISS the instant petition in its entirety with prejudice. ECF Dkt. #1.

DATE: July 1, 2013                             */s/ George J. Limbert*
                                                GEORGE J. LIMBERT
                                                UNITED STATES MAGISTRATE JUDGE

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice. Fed. R. Civ. P. 72; L.R. 72.3. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. L.R. 72.3(b).